```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------ X
                                           :    17cv9721 (DLC)
DENISE MARTIN,                             :
                          Plaintiff,       :    OPINION AND ORDER
                                           :
          -v-                              :
                                           :
NEW YORK STATE, NEW YORK STATE             :
DEPARTMENT OF CORRECTIONS AND COMMUNITY    :
SUPERVISION, and JEFFREY RORICK,           :
                                           :
                          Defendants.      :
                                           :
------------------------------------------ X
```

APPEARANCES

For the plaintiff:
David DeToffol
DeToffol & Associates
125 Maiden Lane, Suite 5C
New York, New York 10038

For defendants New York State and the New York State Department
of Corrections and Community Supervision:
Letitia James
Attorney General of the State of New York
by Yan Fu, Assistant Attorney General
28 Liberty Street, 18th Floor
New York, New York 10005

For defendant Jeffrey Rorick:
Ryan T. Donovan
Harris, Conway & Donovan, PLLC
50 State Street, 2nd Floor
Albany, New York 12207

DENISE COTE, District Judge:

    Defendants New York State ("NYS"), the New York State Department of Corrections and Community Supervision ("DOCCS"), and Jeffrey Rorick ("Rorick") have moved for summary judgment on

the claims asserted against them by plaintiff Denise Martin ("Plaintiff" or "Martin"). Those motions are granted.

## **Background**

The following facts are undisputed or taken in the light most favorable to the Plaintiff, unless otherwise noted. Plaintiff is, and was at all times relevant to this lawsuit, a Correctional Officer ("CO") at the Bedford Hills Correction Facility ("Bedford Hills"), which is operated by DOCCS. Defendant Rorick was a sergeant at Bedford Hills. DOCCS's sergeants are responsible for supervising a group of COs in carrying out their daily responsibilities, under the further supervision of a Lieutenant. Sergeants have no power to hire, fire, transfer, reassign, or promote a CO. Nor can a sergeant alter a CO's work schedule, compensation, or benefits.

In or around October 2015, Martin entered into a consensual sexual relationship with Rorick. At some point during their relationship, Martin shared intimate photographs and a video of herself with Rorick. In February of 2016, Martin was informed by CO Sylvia Meyers ("Meyers") that those images had been circulated among employees at Bedford Hills. Martin ended her relationship with Rorick and, on February 16, 2016, filed a complaint with DOCCS's Offices of Diversity Management ("ODM"). The day after filing her complaint, Martin went on unrelated worker's compensation leave. She went on a pre-planned vacation

2

shortly thereafter. She returned to duty on April 20, 2016.

Affirmative Action Administrator ("AAA") LaShanna Frasier ("Frasier") was assigned to investigate Martin's allegations. On March 1 and 2, Frasier interviewed Martin by telephone. On April 4, Frasier interviewed Meyers and another Bedford Hills CO, Darnell Moore ("Moore"). Meyers told Frasier that she had received the compromising images of Martin from Moore, who asked her to inform Martin that the images were being circulated among Bedford Hills staff. Moore told Frasier that he had received the photos in a group text message, but that he did not recognize the other numbers on the group text message.

On April 11, the Superintendent of Bedford Hills, at Frasier's instruction, issued a "Cease and Desist Memorandum" to Rorick, directing him to cease and desist from any action that may be construed as being discriminatory or harassing in nature. On June 10, Frasier directed Bedford Hills to have a supervisor read from a "Conduct Within the Workplace Memorandum" at the beginning of each shift, for nine consecutive shifts, to remind staff of appropriate workplace behavior. Martin has not alleged that Rorick engaged in any further discriminatory or harassing conduct beyond what she reported in her February 2016 complaint.

Frasier regularly communicated with Martin and with Bedford Hills Captain Paul Artuz about the investigation's progress and to ensure that Martin was not being harassed or retaliated

3

against. During one of her conversations with Frasier, Martin stated that "everyone" at Bedford Hills was talking about her, including inmates. She specifically identified two Bedford Hills COs, St. Claire Munnlyn ("Munnlyn") and Timothy Romero ("Romero"), who she alleged were talking about her outside her presence. Other than Munnlyn and Romero, Martin did not identify or provide descriptions of staff or inmates who were talking about her. She stated that nobody, including Romero or Munnlyn, had said anything to her directly about the photos and video, and she could not identify any person who had witnessed Munnlyn or Romero talking about her.

In August 2016, AAA Frasier interviewed COs Munnlyn and Romero about Martin's allegations. Both COs acknowledged that they had seen the images but denied harassing Martin or talking about the pictures and videos to her. Neither Munnlyn nor Romero were able to identify the person who had originally circulated the images. In an attempt to trace the images to their original sender, Frasier interviewed several COs and sergeants in addition to Meyers, Moore, Munnlyn, and Romero. None of these individuals stated that they had seen the images.

Frasier interviewed Rorick on September 27, 2016. Rorick admitted to Frasier that he and Martin had exchanged such images, but denied sending the pictures and video to anybody else.

4

Frasier submitted her investigative report on November 7, 2016.  In it, she determined that Rorick had violated DOCCS Directive #2605, entitled "Sexual Harassment in the Workplace," which states that "DOCCS has a zero tolerance policy with respect to sexual harassment in the workplace and provides no latitude for the investigation of sexual harassment."  She also determined that Rorick had violated Section 2.1 of the DOCCS Employee's Manual, which states that "no employee, whether on or off duty, shall so comport himself or herself as to reflect discredit upon the Department or its personnel."  Frasier recommended appropriate administrative action and the matter was referred to the DOCCS Bureau of Labor Relations ("BLR"), which is responsible for administering the terms and conditions of employment for DOCCS employees.

On December 22, 2016, Rorick was placed on administrative leave.  BLR served a Notice of Discipline ("NOD") on Rorick on December 26 based on ODM's investigation and recommendation.  On that same date, Rorick was suspended indefinitely without pay.

Pursuant to a collective bargaining agreement, a DOCCS employee must be served with an NOD before imposition of a penalty involving a loss of leave credits or other privilege, written reprimand, fine, suspension without pay, reduction in grade, or dismissal from service.  Upon receipt of an NOD, the employee can either accept the penalty or file a grievance with

5

BLR.  If the grievance is not settled or otherwise resolved, it may be appealed to arbitration.

On February 14, 2017, prior to arbitration, Rorick, his union, and DOCCS settled the NOD.  As part of that settlement agreement, Rorick agreed to serve a suspension without pay from December 26, 2016 through March 26, 2017, to be reassigned to Five Points Correctional Facility in Romulus, New York, and to serve a twelve month Disciplinary Evaluation Period, which is a form of probation.  Rorick never returned to Bedford Hills after December 22, 2016.  The Disciplinary Evaluation Period ended on March 26, 2018, without incident.

On October 11, 2016, almost a month before Frasier submitted her report, Martin filed a complaint with the Equal Employment Opportunity Commission ("EEOC").  She received a right to sue letter on September 28, 2017.

On December 11, 2017, Martin commenced this action against NYS, DOCCS, and Rorick.  Martin filed a First Amended Complaint ("FAC") on February 14.  The FAC asserts claims against NYS and DOCCS for sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-3(a).  It also asserts claims against Rorick for sex discrimination, retaliation, and aiding and abetting liability under the New York Human Rights Law, ("HRL"), N.Y. Exec. L. § 296, as well as common law claims for negligent infliction of

6

emotional distress and intentional infliction of emotional distress.

Discovery closed on February 15, 2019. Defendants NYS and DOCCS filed a joint motion for summary judgment on March 14. Rorick separately moved for summary judgment on the same date. Those motions became fully submitted on April 25, 2019.

### Discussion

A motion for summary judgment may not be granted unless all of the submissions taken together "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 113 (2d Cir. 2017) (citation omitted). The moving party bears the burden of demonstrating the absence of a material factual question. Gemmink v. Jay Peak Inc., 807 F.3d 46, 48 (2d Cir. 2015). In making this determination, the court must "view the evidence in the light most favorable to the party opposing summary judgment" and "draw all reasonable inferences in favor of that party." Weyant v. Okst, 101 F.3d 845, 854 (2d Cir. 1996).

Once the moving party has asserted facts showing that the non-movant's claims or affirmative defenses cannot be sustained,

7

the party opposing summary judgment "must set forth specific facts demonstrating that there is a genuine issue for trial." Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (citation omitted). "[C]onclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment," Ridinger v. Dow Jones & Co. Inc., 651 F.3d 309, 317 (2d Cir. 2011) (citation omitted), as is "mere speculation or conjecture as to the true nature of the facts." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Only disputes over material facts will properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Martin has withdrawn all of her claims against NYS as well as her retaliation claims against DOCCS.[1] Only Martin's Title VII hostile work environment claim remains against DOCCS.[2] She has also withdrawn her negligent infliction of emotional distress claim against Rorick. Her HRL and intentional

---

[1] It is undisputed that she suffered no adverse employment action as required to maintain a retaliation claim against DOCCS. See Littlejohn v. City of New York, 795 F.3d 297, 315-16 (2d Cir. 2015).

[2] In her opposition to DOCCS's motion for summary judgment, Martin appears to suggest that DOCCS may be liable under the HRL. The FAC does not assert a claim against DOCCS for violation of the HRL. In any event, such a claim against NYS or DOCCS would be barred by the Eleventh Amendment.

infliction of emotional distress claims against Rorick remain.

DOCCS

DOCCS's motion for summary judgment on Martin's Title VII claim is granted. Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The Supreme Court has explained that this prohibition extends to "a discriminatorily hostile or abusive [work] environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). In order to prevail on a hostile work environment claim, a plaintiff must "produce enough evidence to show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Duplan v. City of New York, 888 F.3d 612, 627 (2d Cir. 2018) (citation omitted). "A plaintiff must show not only that she subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive." Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 102 (2d Cir. 2010). Courts are required to "look at the record as a whole" and consider "a variety of factors, including the frequency of the discriminatory conduct; its severity; whether it is

physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. (citation omitted)

"An employer's liability for hostile work environment claims depends on whether the underlying harassment is perpetrated by the plaintiff's supervisor or [her] non-supervisory co-workers." Wiercinski v. Mangia 57, Inc., 787 F.3d 106, 113 (2d Cir. 2015).

> [A]n employee is a 'supervisor' for purposes of the employer's vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim, i.e., to effect a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a change in benefits."

Id. at 113-14 (citation omitted). When the harassment is perpetrated by a non-supervisory coworker, an employer will only be held liable for its own negligence. Duch v. Jakubek, 588 F.3d 757, 762 (2d Cir. 2009). To show employer negligence, a plaintiff "must demonstrate that her employer failed to provide a reasonable avenue for complaint or that it knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action." Id. (citation omitted)

"In determining the appropriateness of an employer's response, we look to whether the response was immediate or

timely and appropriate in light of the circumstances, particularly the level of control and legal responsibility the employer has with respect to the employee's behavior." Summa v. Hofstra Univ., 708 F.3d 115, 124 (2d Cir. 2013) (citation omitted). "The standard for reviewing the appropriateness of an employer's response to co-worker harassment is essentially a negligence one, and reasonableness depends among other things on the gravity of the harassment alleged." Id. at 125 (citation omitted). There is "no legal requirement that an employer discipline employees where it succeeds in eradicating the offensive behavior from the workplace by other means." Chenette v. Kenneth Cole Prods., 05cv4849(DLC), 2008 WL 3176088, at *11 (S.D.N.Y. Aug. 6, 2008). Rather, the employer's response need only be "sufficiently calculated to end the harassment." Murray v. New York Univ. Coll. Of Dentistry, 57 F.3d 243, 250 (2d Cir. 1995).

Martin makes no argument that Rorick was Martin's "supervisor" and the undisputed facts indicate that he was not. Nothing in the record indicates that Rorick had the power to effect a significant change in Martin's employment status. Wiercinski, 787 F.3d at 114. Further, there is no dispute that DOCCS provided a reasonable avenue of complaint. See Duch, 588 F.3d at 762. To maintain her hostile work environment claim against DOCCS, Martin therefore must show (1) that DOCCS knew or

11

should have known about the harassment and (2) that DOCCS failed to take appropriate remedial action. It is undisputed that DOCCS was aware of the harassment as of at least February 2016.

Martin's objections to the adequacy of the remedial measures undertaken by DOCCS are based primarily on the amount of time that elapsed between the filing of her complaint and Rorick's removal from Bedford Hills. Martin argues that "a reasonable jury could easily find that eight (8) months is tantamount to negligent procrastination." This argument is unpersuasive.

The undisputed facts show that DOCCS promptly undertook an investigation into Rorick's conduct, directed Rorick to cease and desist from any harassing behavior, and took steps to mitigate workplace harassment generally. Martin did not allege any further harassment by Rorick after the investigation was commenced. Although Martin alerted Frasier that other COs were talking about her outside of her presence, she provided no details to substantiate that complaint. Nonetheless, Frasier investigated that lead, and was unable to corroborate it. To the extent that there is a dispute as to whether Martin was subject to further harassment by other coworkers after the investigation was commenced, that dispute has little bearing on DOCCS's liability because it was never reported to DOCCS. DOCCS could not reasonably be expected to have addressed harassment of

which Martin never complained.  In short, there is no evidence from which a reasonable jury could find that DOCCS acted negligently or that its remedial response was inadequate.

Jeffrey Rorick

Rorick's motion for summary judgment on the remaining claims against him is granted.  The HRL provides that "it shall be an unlawful discriminatory practice . . . for an employer or licensing agency, because of . . . sex . . . to discriminate against [an] individual in compensation or in terms, conditions, or privileges of employment."  N.Y. Exec. Law § 296(1)(a).  Section 296(7) of the HRL prohibits "retaliate[ion] or discriminat[ion] against any person because her or she has opposed any practices forbidden under [the HRL] or because he or she has filed a complaint, testified, or assisted in any proceeding under this article."  Id. § 296(7).

The HRL differs from Title VII in that "[u]nder the HRL . . . individual defendants may be sued in their personal capacities for the sexual harassment."  Tomka v. Seiler Corp., 66 F.3d 1295, 1313 (2d Cir. 1995).  It is well established, however, that an employee "is not individually subject to suit with respect to discrimination based on . . . sex under [the HRL] . . . if he is not shown to have any ownership interest or any power to do more than carry out personnel decisions made by others."  Patrowich v. Chemical Bank, 63 N.Y.2d 541, 542 (1984).

13

Section 296(6) of the HRL also states that it shall be an unlawful discriminatory practice "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so." N.Y. Exec. Law § 296(6). "Based on this language, several courts have . . . [held] that a defendant who actually participates in the conduct giving rise to a discrimination claim may be held personally liable under the HRL." Tomka, 66 F.3d at 1317.

Because he was not an "employer," Rorick is not subject to liability under the HRL. Martin has not presented any evidence to suggest that Rorick had any "ownership interest" or "power to do more than carry out personnel decisions made by others." Id. Further, Martin has admitted that Rorick did not retaliate against her.

Rorick cannot be subject to liability for "aiding and abetting" under the HRL in the absence of a primary violation of that law. See Forrest v. Jewish Guild for the Blind, 3 N.Y.3d 295, 314 (2004). Martin does not assert a claim for violation of the HRL against any defendant other than Rorick,[3] whose conduct, for reasons just explained, does not constitute a violation of the HRL.

---

[3] Nor could she maintain such a claim against NYS or DOCCS, as explained above.

Martin's claim for intentional infliction of emotional distress is time barred. That claim is subject to a one year statute of limitations. N.Y. C.P.L.R. § 215(3). Martin has not alleged any potentially tortious conduct by Rorick that occurred after February 2016. Martin commenced this action on December 11, 2017. Her claim for intentional infliction of emotional distress is therefore barred by the statute of limitations.

Martin's argument that her filing of an EEOC charge on October 11, 2016 tolled the statute of limitations on her intentional infliction of emotional distress claim is meritless. "[F]iling an EEOC charge does not toll the time for filing state tort claims, including those that arise out of the same nucleus of facts alleged in the charge of discrimination filed with the EEOC." Castagna v. Luceno, 744 F.3d 254, 258 (2d Cir. 2014).

## Conclusion

The defendants' March 14 motions for summary judgment are granted. The Clerk of Court is directed to enter judgment for the defendants and close this case.

Dated: New York, New York
May 9, 2019

_____
DENISE COTE
United States District Judge